Good morning, and may it please the Court. I'm David Coles, and I represent Joel Mendez-Morales, who, just to briefly recap, sought nothing but relief under the Convention Against Torture below, and in particular, only deferral under the Convention Against Torture, not withholding, not asylum, nothing else. In other words, he sought pure, non-discretionary relief. The first point I'd like to stress is 8 U.S.C. 1252a2c, the so-called jurisdiction stripping provision, I want to try to make sense of the arguments in the briefs that that does not apply in this case. The cases Unua, Kualu, Ruiz-Morales, and then it's difficult to see what exactly is going on, but I think that the difficulty or the complexity in those cases isn't present here. In those cases, the complexity involves whether and to what extent an exercise of discretion by the Attorney General affects jurisdiction in this Court on review, and in particular, with respect to the various different kinds of relief and the different rules governing those kinds of relief, asylum, withholding, withholding under the convention, deferral under the convention. So for example, in Unua, Kualu, the Court found that it wouldn't have discretion where the attorney sorry, jurisdiction, where the Attorney General determines in its discretion that an offense that isn't on its face, an aggravated felony, is nevertheless a particularly serious crime. He was not removed as an aggravated felon, right? He was not. He was found removable both as an aggravated felon and as someone who had stayed too long, I believe, as Kualu overstayed as a visitor. I mean, Mr. Mendez. My client? Yes. He was not removed at all. Right. So there wasn't a removal of him theoretically as an aggravated felon. So there's a final order of removal. So we're not barred, right? That's my view. You're not barred at all. And in particular. The DOJ here is arguing that we're barred from jurisdiction because we're barred from hearing your case because he was removed as an aggravated felony. But that can't possibly be the case here because the so-called felony occurred in Mexico and he wasn't even here. That's another element of the argument. But I think really it amounts to this exercise of discretion issue. Deferral, the cases are not about Petitioners who seek merely deferral under the Convention, which is nondiscretionary. They're always also seeking asylum or withholding, not withholding under the Convention, but withholding. And when they do, there are tricky issues that this Court has to face in terms of its jurisdiction. But our cases have been clear in this circuit that where a decision denying relief under the Convention, in particular, where such a decision was made on the merits, which is to say not as a matter of discretion, this Court has held repeatedly that 1252A2C doesn't apply. So we don't so you're not stripped of jurisdiction, so we don't then have to move into subsection A2D, which then returns to the court jurisdiction to review constitutional issues and questions of law, which under Ramadan are broadly construed to include mixed questions of law and fact. Ramadan, incidentally, a rehearing and rehearing en banc was denied in the end of September. I don't think that's in any of the briefs. So in this case, that's my view, that for various reasons in the briefs, and some of those reasons are much more complicated than I think they needed to be, 1252A2C doesn't apply. And hence, this Court has jurisdiction to review his petition completely under the substantial evidence test. All right. I assume we're with you on that just for a minute, and we'll hear from the government on that. But would you please address the analysis of the inconsistencies that the BIA relied upon in making its adverse credibility finding? Are they, in fact, inconsistencies? Or are there explanations? For example, the first one was the BIA said that there was a discrepancy between the applicant's statement at his credible fair interview and testimony at the hearing regarding whether or not he saw a judge when he was in prison in Mexico. Right. I think there's just no making sense of the transcript. And if I could, I'd like to make one small preliminary point and then address the actual facts. The government has also argued that, in essence, we're asking you to review facts which you can't review. And I'd like to point out that the argument that I've made in the briefs is that this is a violation of due process in any event. It's as if, because the grounds on which adverse credibility and denial of relief was based were impermissible grounds, this is just as if the IJ had said, I'm denying relief because you have black hair. Now, we can make a distinction here between his factual finding of black hairedness, which may be, if you're not with me on the jurisdictional issue, you wouldn't have jurisdiction to review. But that's different from the question whether it's permissible to base an adverse credibility determination or denial of relief on a finding that black hairedness matters. That's a permissible finding of it. So the discrepancy that the IJ and the BIA discussed concerning whether Hoel saw a judge, I think you just can't make sense of it.  Maybe speaking about whether he saw a judge with respect to early release issues, and then the other, it's whether he told a judge that his confession had been coerced, and so on. You know, I've tried. I can't figure it out. I simply can't figure it out. And I think in light of the fact that he was in a video conference, not present in front of the IJ, he's not an English speaker, he's got a third grade education, had no idea what was going on, was representing himself to the extent he was even able to do that. He just didn't get it. And he was never. Well, you can say that. But the IJ thought he got it and thought he got it wrong. The IJ made it, one of his credibility was, you know, I just don't believe this guy when he says, oh, I was just sent to prison for six years and never saw a judge. I don't believe it, he said. In first place, he said he did see a judge at one point and asked the judge, said he wanted to attack his confession or something. And then he never saw a judge again, at least. At very least, he never saw a judge again. He was just sent away to prison for six years. That's what he says. IJ doesn't buy that. What's wrong with that? What's wrong with that is that. The one thing, it's sort of incomprehensible. I don't think the Mexican judicial system is so bad and the Mexican system is so bad, they're putting people in prison for six years without going in front of a judge. I wouldn't want to speculate about that. Well, OK, we don't want to speculate, but that's the point. The IJ said, I just don't believe this story. No, I appreciate your point. And I think that our point is he didn't know what was going on. He never was meaningfully asked by our judge to explain what was going on. And for all we know, he thought judge meant something. Sure, we can speculate all kinds of things. For all we know, he was under the influence of drugs when he was on. For all we know, all kinds of things. For all we know, he's very truthful. He's just stupid. For all we know, he didn't really shoot that lady in the face. There are all kinds of for all we knows. That's speculation on the other side of it. We're allowed to demonstrate that there was speculation on the part of the IJ. I'd like to reserve the last minute or so. But the problem is we're wrestling with the Real ID Act, credibility, new law here. And I don't, are you taking the position that, in fact, he did make inconsistent statements as to whether or not he saw a judge? You can read them as inconsistent. I think that's right. I mean, on the one hand, he says X. On the other hand, he says Y. But I think you can't, that's not enough. What you get, if you exclude all the rest, even if you keep this in, you haven't met the substantial evidence burden. And therefore, But under the new act, it says that the immigration judge can rely on an inconsistency regardless if it goes to the heart of the claim. It does say that, but it has to be permissible. You can't rely on speculation now. You can't rely on conjecture. But the judge isn't relying on speculation. He's saying there is this inconsistency. And you're saying, yep, you can see it that way. Perhaps with respect to this grand issue. First, you don't necessarily read it as an inconsistency. But you're your client's advocate. And if you're telling me it is inconsistent, I'm not going to accept that. I'm not telling you it is. I'm saying, I don't think it is. I think it's something you just can't understand. Well, I mean, there is an explanation. You haven't thought of it? No. I'm happy to hear it. How do you respond to the government's argument that no one who visited the petitioner in prison ever noticed any evidence of the beatings? They weren't doctors. They don't, you know, he maybe hit it. Torture isn't always visible. Being hooded, for example, isn't something that would result in visible manifestations. They just didn't see it. I'd like to reserve the 15 seconds, if I could. No, you actually ceded your time. Oh, I'm sorry. Sorry, sorry. Thank you very much. May it please the Court. My name is Daniel Davis. I represent the acting attorney general in this matter. This case may be resolved on one of two independent grounds. First, this court lacks jurisdiction to review the petition because petitioner was ordered removed solely on the ground of having committed an aggravated felony and pursuant to the second. The aggravated felony was attempted premeditated murder. In Mexico. So he wasn't here. So the statute says it has to be while he's here, after a deportation, after admission. He has to be committed. The aggravated felony must have been committed after admission under section 1227.828, all three. So let's move on. What's the second reason? The second reason is that Morales was, that the petitioner has not carried his burden of showing that he was entitled to relief under the Convention Against Torture. Now, that burden is petitioners. And that burden is that he has to show that it is more likely than not that he will be tortured in the future upon returning to Mexico. He has not carried that burden. There is substantial evidence in the record to support the immigration judge's finding and the Board of Immigration Appeals' finding that that burden has not been met. Let me address a couple of questions asked of opposing counsel. First of all, when talking about the interaction, the various statements about whether or not a petitioner said he saw or said he did not see a judge, I would point to page 152 of the administrative record. In that part in the hearing, counsel gave the petitioner an opportunity to explain what he meant exactly by was it really true that you did not see a judge or did see a judge? And in that, he was given an opportunity to explain whether he did or did not. And that is inconsistent with his testimony before the asylum officer, where he said that he did not. So there is clear problems with petitioner's testimony regarding the judge, whether he saw a judge or not. It is completely within the immigration judge's discretion, within the board's discretion, to take those statements, look at them, and determine that there is an inconsistency. And once the board has made a determination there is an inconsistency, as is discussed in the statute, that inconsistency is a sufficient ground in and of itself to find that there is an adverse credibility problem. Now, there are other items that the board relied upon or discussed in saying that a petitioner was not credible with respect to Judge Mill's question about the visits. There is plausible, and it is certainly a reasonable interpretation for the immigration judge to make that when the sister and the brother-in-law visited the petitioner on his first visit, that petitioner didn't make any mention whatsoever that he had been beaten by guards or that he'd been beaten by other individuals and that he showed no sign of having been treated in that manner. And in addition, from the record, it appears that the substance of that conversation with the petitioner during that first visit was about the concerns about another inmate and about concerns that the petitioner had about this particular inmate getting proper medication for his epilepsy problem. Sometimes I mix up these cases. Is this the fellow who said that he was beaten around the head? Did you get him in the head and such? Yes. Yes. And so it is plausible for the immigration judge and the BIA to conclude that when the petitioner is claiming that he is beaten multiple times on the head, that there should be or is likely to be evidence of that type of a beating. And it is significant that both the sister and the brother-in-law testified that they did not seem. They complained about headaches, didn't they? Wouldn't that be consistent with that type of beating? There are complaints about headaches in the record. But as the immigration judge and the BIA looked at the totality of circumstances, all the evidence in the record, it's reasonable to conclude that it would be odd for him not to show any signs of it or not to mention it at all with his sister and his brother-in-law.  How do you know that beating around the head is always visible? I don't know that it's always visible, but it seems plausible that when you think about. But what are you basing that statement on? What do you know about this? Are you basing anything in the record? Is there some expert testimony or anything that would tell us what torture about the head looks like? No, I'm not, Your Honor. But I. You're just making this up as you go along. I mean, it's like the IJ is allowed to engage. Have you ever seen someone who's been beaten about the head? No, I have not. OK. There's also inconsistencies in the petitioner's testimony regarding his status with his girlfriend. At some points in the record, he seems to believe that it is because of her that he's being beaten in the prison. In other times in testimony, it seems that they are on good terms. At one point, he says that he refuses to see her. That's on page 435 of the record. In other cases in the record, he talks about the petitioner and the victim visited in the prison. So there are a number of inconsistencies in the record that the immigration judge looked at and that the Board of Immigration Appeals looked at and relied upon in accordance with the discretion given them by the statute to look at inconsistencies in the record and use those inconsistencies as the basis for an adverse credibility determination. This case is unusual in that we actually have two doctors who examine Mr. Morales. And both of them find evidence that supports his claim of torture. If the adverse credibility determination is sustained, what those records show is that he has suffered pain. He's had several scars. He has a problem with his arm. He suffers from headaches. What that does not show is that those marks or that pain or those problems that he has are related to his condition. They're related to torture or the possibility of future torture done by the Mexican government or at the acquiescence of the Mexican government. So we would submit that though those reports do show that petitioner does suffer pain, and he has suffered scars, and he has a number of different medical and health problems, that those reports in and of themselves are insufficient to show, to meet the cap standard of showing that it is more likely than not that he will be tortured by the Mexican government or at the acquiescence of the Mexican government should he be returned to Mexico. Don't they go to his credibility? They can be considered as part of the credibility analysis. I mean, I would note at one point that the petitioner states that he suffered a number of cigarette burns. The Dr. Heath report, and I believe this is at page 190, says that only one of his scars might be consistent with cigarette burns. And the number of other of his scars, I believe it was on his left forearm, are not consistent with cigarette burns. So the health report themselves creates other inconsistencies with the petitioner's testimony. Right, but I agree in general with your statement about that he has to meet a burden of showing that the Mexican government would more likely than not subject him to torture. But the BIA and the IJ's determinations turned on the lack of credible testimony. The BIA has said, without credible testimony, however, we cannot credit his claim that he was tortured while in prison in Mexico. So your further argument that, yes, he shows the exhibits, all these physical attributes of having been tortured, physical and psychological attributes of having been tortured, but that doesn't show that the Mexican government would do it, that's not what the BIA and the IJ ruled here. They ruled that they didn't believe him, that he was tortured. And then the BIA went on to say that, in the rest of the paragraph, saying the rest of the evidence is that there is, you know, in some instances there is torture in Mexican prisons, and that's not enough. All the corroborating evidence that there is demonstrates that in Mexico there's torture in prisons. Right, and they both, they acknowledge that, so that would seem to support his claim, not to undermine his claim. Well, it demonstrates that in some circumstances there is torture in Mexican prisons. What the standard is is that it is more likely than not that this particular individual will be subjected to torture. And the fact that there may be a few tortures in Mexico does not mean that this particular individual will be subject to torture. Now, if you had, in other countries, you know, torture in prisons is more prevalent or more significant or more widespread. That may be a closer call. But in this case, the evidence shows that there is abuse and there is a torture in some cases, but it's relatively limited. There are no other questions. Thank you. The matter just argued will stand submitted.
judges: Fernandez, Wardlaw, Mills